UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JACQUELYNN NICKLER,<br><br>                      Plaintiff(s),<br><br>    v.<br><br>COUNTY OF CLARK, et al.,<br><br>                      Defendant(s). | Case No. 2:14-CV-1907 JCM (CWH)<br><br>ORDER |

Presently before the court is plaintiff Jacquelynn Nickler's (hereinafter "plaintiff") motion for a preliminary injunction. (Doc. # 8). Defendant Steve Grierson ("Grierson") filed a response, (doc. # 22), defendants Clark County and Kathleen Lambermont ("Lambermont") filed a joinder to defendant Grierson's response, (doc. # 24), and plaintiff filed a reply, (doc. # 31).

**I.     Background**

This is a civil rights case brought under 42 U.S.C. § 1983. Plaintiff works as a district attorney team clerk with the Clark County district attorney's office. At the relevant time, defendant Grierson was the Regional Justice Center ("RJC") court executive officer. Defendant Lambermont was employed as an administrator for the Clark County district attorney's office. Plaintiff sues defendants Grierson and Lambermont in their individual capacities. (Doc. # 1).

The instant action arises out of incidents occurring on December 17, 2012. Plaintiff arrived at work that morning and belatedly received her calendar for the day. In the preceding month, the court had implemented a new calendaring program which increased the workload for those in plaintiff's position. (Doc. # 1).

As a result of the new program, plaintiff's calendar on December 17, 2012, was much longer than usual. Plaintiff and her supervisor rushed to prepare the additional cases on her

**James C. Mahan**
**U.S. District Judge**

calendar before court commenced for the day. During this time, plaintiff made a comment along the lines of "no wonder shit like Friday happens."[1] (Doc. # 1).

On the preceding Friday, December 14, 2012, another justice court employee, Rosemary Servin, left work without completing her tasks. She allegedly did so out of frustration with the new calendaring system. Plaintiff contends that she was referencing Ms. Servin's departure in making the above comment. (Doc. # 1). However, Friday, December 14, 2012, was also the date of the Sandy Hook Elementary School shooting in Newtown, Connecticut.

Based on her statement, plaintiff was later escorted out of a meeting to a private office by defendant Lambermont. Defendant Lambermont advised plaintiff that the employer would be conducting a workplace violence assessment. Plaintiff was instructed to pack up her belongings and was escorted out of the building. Defendant Lambermont suspended plaintiff pending an investigation. Plaintiff's identification badge and office keys were confiscated. (Doc. # 1).

Also on December 17, 2012, defendant Lambermont observed a number of violence and gun-related cartoons, photos, and logos in plaintiff's cubicle. These items increased defendant Lambermont's concern that plaintiff posed some danger to the RJC community. (Doc. # 22).

On December 21, 2012, plaintiff met with human resources. On December 31, 2012, plaintiff attended a disciplinary hearing. At the conclusion of the hearing, plaintiff's access badge was returned and she was granted permission to return to work on January 3, 2013. However, on January 2, 2013, defendant Lambermont called plaintiff at her home and told her that she would not have the same "badging privileges" as other employees when she returned to work. RJC employees may generally use their badges to enter the building without being searched, while members of the public must remove their shoes and consent to scans of their belongings and person. (Doc. # 1).

---

[1] The parties provide a few different versions of plaintiff's statement(s). According to defendant Grierson's response to plaintiff's motion for a preliminary injunction plaintiff stated that "she was sick and tired of this place and that it makes her want to do what happened on Friday." The parties also note that plaintiff made such a statement first while with her supervisor, and later repeated it in the elevator in the presence of other employees. (Doc. # 22). Because these factual discrepancies are not dispositive of the instant motion, the court will not examine them in detail.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1       On January 3, 2013, plaintiff arrived at the loading dock near the south entrance to the RJC at 6:30 am, as instructed. The loading dock was not open and plaintiff could not get into the building. Clark County District Attorney Steve Wolfson ("Mr. Wolfson") eventually arrived and inquired into why plaintiff was denied access. The loading dock was later opened and plaintiff was required to remove her jacket and shoes and submit to a scan of her belongings and person before entering the building. (Doc. # 1).

      Upon plaintiff's return to work, defendant Lambermont required plaintiff to undergo a certificate for fitness procedure. As part of this process, plaintiff attended a mental health evaluation on January 24, 2013. The evaluation included a written examination and meeting with a psychologist. Plaintiff was issued a certificate of fitness to perform all duties of her position with no restrictions. (Doc. # 1).

      Plaintiff authorized the limited release of the results of this certification procedure to prove that she could perform her position without restriction. However, plaintiff contends that after the certificate of fitness was issued, defendants Lambermont and Grierson "insisted upon obtaining information beyond the scope of Plaintiff's limited release in violation of Plaintiff's HIPAA rights." (Doc. # 1).

      Further, despite the certification, plaintiff continues to be subjected to searches upon entry to the RJC through the public entrance every day when she arrives for work. This includes removing her shoes and jacket, submitting her personal belongings to scanning, and having her person wanded. Plaintiff must comply with this procedure in spite of the fact that other employees may enter the building without being searched. Plaintiff has asked for reinstatement of her badging privileges, but her requests have been refused. (Doc. # 1).

      On the basis of the above allegations, plaintiff filed the instant complaint with this court asserting (1) a cause of action under 42 U.S.C. § 1983 for various constitutional violations; (2) a *Monell* claim; and (3) a cause of action for negligence. (Doc. # 1). Plaintiff then filed the instant motion for a preliminary injunction.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

## II. Legal Standard

Federal Rule of Civil Procedure 65 provides that the court may issue a preliminary injunction on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). A preliminary injunction seeks to preserve the status quo and prevent irreparable harm from occurring before a judgment is issued. *Textile Unlimited Inc. v. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001).

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a preliminary injunction: (1) likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale tests. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*

"Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## III. Discussion

Plaintiff seeks an order enjoining defendants from treating plaintiff differently from her similarly situated co-workers. (Doc. # 8).[2] In determining whether plaintiff is entitled to a preliminary injunction, the court will first address whether plaintiff has shown a likelihood of success on the merits of her claims.

---

[2] Defendants argue that this constitutes a request for a mandatory preliminary injunction in that plaintiff seeks reinstatement of her badging privileges. Plaintiff appears to argue that she requires a prohibitory injunction forcing defendants to stop searching her. The court notes that mandatory injunctions are disfavored and granted subject to a higher standard. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). This distinction is irrelevant in the instant case, however, because the court finds that plaintiff does not meet either standard.

**James C. Mahan**
**U.S. District Judge**

- 4 -

### A. Likelihood of success on the merits

Plaintiff's complaint includes the following causes of action: (1) violations of 42 U.S.C. § 1983; (2) *Monell* claim under 42 U.S.C. § 1983; and (3) negligence. The court will evaluate the merits of each cause of action in turn.

#### i. 42 U.S.C. § 1983

Plaintiff's claim for violations of 42 U.S.C. § 1983 includes multiple allegations of constitutional violations. Defendants Lambermont and Grierson argue that plaintiff cannot show a likelihood of success on the merits of her claims under section 1983 because (1) her constitutional claims are not viable, and (2) these defendants are entitled to qualified immunity. Each constitutional claim will be analyzed below.

##### a. Unreasonable search and seizure

Plaintiff first contends that the conduct at issue violates her Fourth and Fourteenth Amendment rights against unreasonable searches and seizures. Plaintiff cannot show a likelihood of success on the merits for this claim.

Administrative searches, "conducted as part of a general regulatory scheme in furtherance of an administrative purpose," do not require a search warrant. *United States v. $124,570 in U.S. Currency*, 873 F.2d 1240, 1243 (9th Cir. 1989). These searches are subject to the Fourth Amendment's reasonableness requirement. *Id.* Further, workplace searches of government employees must be "judged by the standard of reasonableness under all the circumstances." *O'Connor v. Ortega*, 480 U.S. 709, 710 (1987).

Courts have found that security procedures similar to those at issue here do not violate the Fourth Amendment. *See United States v. Marquez*, 410 F.3d 612, 616-17 (9th Cir. 2005) (upholding as reasonable airport screening of passengers and baggage, in light of societal safety interests). In particular, the Ninth Circuit has condoned similar searches of individuals entering courthouses. *Klarfeld v. United States*, 944 F.2d 583, 586 (9th Cir. 1991) (upholding as reasonable a search policy requiring attorney to remove his shoes after he twice set off magnetometer); *McMorris v. Alioto*, 567 F.2d 897, 900-01 (9th Cir. 1978) (finding requirement that members of public pass through metal detectors and submit to pat-down search to be constitutional).

The court finds these cases to be instructive in evaluating plaintiff's claims for a likelihood of success on the merits. Considering the arguments in plaintiff's motion, plaintiff is not likely to successfully prove a claim for unreasonable search and seizure under the facts at issue. Accordingly, the court does not find a preliminary injunction is warranted on these grounds.

### b.  Fourteenth Amendment equal protection

To the extent that plaintiff attempts to make an equal protection claim, she similarly does not show a likelihood of success on that cause of action. Differential treatment does not violate the equal protection clause "so long as it does not employ a classification that is inherently invidious or [] impinges on fundamental rights, if it classifies the persons it affects in a manner rationally related to legitimate governmental objectives." *Klarfeld*, 944 F.2d at 587 (internal quotation marks and alterations omitted) (citing *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981)).

The Ninth Circuit's holding in *Klarfeld* works against plaintiff here. In that case, the plaintiff, who was an attorney, argued that he was discriminated against because attorneys employed at the courthouse were able to bypass security procedures by showing their badges. 944 F.2d at 587. The court rejected these arguments and concluded, "[t]his security scheme is rationally related to a legitimate governmental purpose, *viz.,* the protection of the Courthouse from violence . . . . Such precautionary measures are not at all irrational." *Id.*

Plaintiff does not allege that she is a member of a protected class. While she claims that she is treated differently from similarly situated employees, this argument mischaracterizes plaintiff's position. Plaintiff and other employees at the courthouse are not similarly situated, as those employees did not make statements reasonably interpreted to be threats.

The facts of this case suggest that defendants had a rational basis for revoking plaintiff's badging privileges, in light of her perceived threatening statement. Plaintiff does not suggest that any other employee made similar comments and was treated differently. Based on the foregoing, plaintiff cannot show a likely equal protection violation.

### c.  First Amendment

Plaintiff also cannot show that she is likely to succeed on her First Amendment claim. "[T]he State's interest in regulating the speech of its employees differs significantly from its

James C. Mahan
U.S. District Judge

- 6 -

interest in regulating the speech of its citizenry." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1219 (9th Cir. 1997).  Speech of public employees is afforded First Amendment protection only where it relates to matters of public concern.  *Id.* (affirming denial of preliminary injunction).

Further, threats of physical violence are not protected in any forum under the First Amendment.  *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371-72 (9th Cir. 1996) (explaining that relevant analysis is whether "a reasonable person in [the speaker's] position would foresee that [the listener] would interpret her statement as a serious expression of intent to harm or assault").

Plaintiff has not shown that this speech is likely entitled to First Amendment protection, thus failing to meet the test for a preliminary injunction on this basis.  To the extent that plaintiff's speech is properly construed as a threat, the parties' pleadings suggest that defendants took appropriate action to investigate and respond to plaintiff's speech.  Even if plaintiff's statement was not a threat, it was an offhand comment rather than pointed political criticism.

While plaintiff contends that this speech related to matters of public concern, the court is inclined to disagree.  Reading plaintiff's statement as she asserts it was intended, plaintiff was expressing frustration with the conditions of her employment.  This is not a matter of political concern to the community.  Accordingly, the court will not grant injunctive relief on First Amendment grounds.

### d.  Ninth Amendment

Plaintiff's complaint includes a claim for violations of "[t]he right to privacy as secured by the Ninth Amendment and the emanations and penumbras of other Amendments to the United States Constitution."  (Doc. # 1).  Plaintiff argues that defendants violated these rights by "insist[ing] upon obtaining information beyond the scope of Plaintiff's limited release. . . ."  (Doc. # 8). [3]

---

[3] At points in her complaint, plaintiff alleges that defendants violated the Health Insurance Portability and Accountability Act ("HIPAA").  (Doc. # 1).  Plaintiff does not provide any case law or legal standard in support of her contention that defendants violated this statute. Accordingly, to the extent plaintiff seeks to state a claim under section 1983 for HIPAA violations, plaintiff has not shown a likelihood of success on the merits to support her request for a preliminary injunction.

James C. Mahan
U.S. District Judge

- 7 -

"The ninth amendment has never been recognized as independently securing any constitutional right for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (affirming district court dismissal of section 1983 claim based on penumbras of the Ninth Amendment). In fact, "[t]he Supreme Court has repeatedly voiced concern that a section 1983 claim be based on a specific constitutional guarantee." *Id.*

Based on the foregoing, plaintiff fails to show that she is likely to succeed on the merits of her Ninth Amendment claim. Accordingly, the court will not grant the motion for a preliminary injunction on this basis.

### e. Fourteenth Amendment due process

Plaintiff is also unlikely to prevail on her due process claim. Plaintiff provides no citation to any legal authority demonstrating that she has a constitutional liberty or property interest in bypassing the courthouse screening process.

Notably, plaintiff contends that the searches at issue have made her late on certain occasions. Further, she argues that she is "also denied the opportunity for overtime on weekends because she has to be personally searched and the security is not on duty at the time that the courthouse is closed." (Doc. # 8). However, plaintiff fails to allege an effect on any interest in continued employment implicating the due process clause of the Fourteenth Amendment. *See Perry v. Sindermann*, 408 U.S. 593, 599 (1972).

Additionally, any argument that the relevant searches implicated plaintiff's liberty interest is unsupported by case law. *See McMorris v. Alioto*, 567 F.2d 897, 901 (9th Cir. 1978) (holding that one impliedly consents to an administrative search of her person and belongings upon entering a courthouse).

To the extent that plaintiff attempts to assert a substantive due process violation, the court finds that such a cause of action would similarly fail. Substantive due process protects only certain fundamental rights, none of which plaintiff has implicated here. *See United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (describing substantive due process rights).

Further, plaintiff's alleged constitutional violations more clearly fit within the Fourth Amendment and the Fourteenth Amendment's equal protection clause. *See United States v.*

**James C. Mahan**
**U.S. District Judge**

- 8 -

*Lanier*, 520 U.S. 259, 272 n.7 (1997) (providing that a constitutional claim covered by a specific amendment should be analyzed under that standard, not substantive due process).

Plaintiff fails to show a likelihood of success on the merits of any of her claims under 42 U.S.C. § 1983 against defendants Grierson and Lambermont. As a result, plaintiff is not entitled to a preliminary injunction based on these claims. Nevertheless, the court will address defendants' qualified immunity arguments, as they provide further support for denial of the instant motion.

### *f. Qualified immunity*

Based on the foregoing analysis, the court has determined that plaintiff has not shown a likelihood of success on the merits of her constitutional claims. Further, even if any of plaintiff's section 1983 claims were meritorious, the court finds that defendants Lambermont and Grierson would be entitled to qualified immunity.

Where a plaintiff has stated a valid cause of action under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *see also Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1058 (D. Nev. 2013).

Qualified immunity "balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244.

Deciding whether an officer is entitled to qualified immunity is a two-step inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. The Supreme Court has instructed

**James C. Mahan**
**U.S. District Judge**

1    that district judges may use their discretion in deciding which qualified immunity prong to address
2    first based on the circumstances of the case at issue. *See id.* at 236.

3    "The contours of the right must be sufficiently clear that a reasonable official would
4    understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).
5    "The relevant, dispositive inquiry in determining whether a right is clearly established is whether
6    it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he
7    confronted." *Id.*; *see also Stanton v. Sims*, 134 S. Ct. 3, 7 (2013) (holding that qualified immunity
8    applied where official's action was not "plainly incompetent" and the constitutional question was
9    not "beyond debate").

10   Further, the Supreme Court has repeatedly held that such "clearly established" rights
11   should not be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083
12   (2011); *Wilson v. Layne*, 526 U.S. 603, 614-16 (1999) (rejecting argument that any violation of
13   the Fourth Amendment is "clearly established" and requiring analysis in context of particular
14   facts); *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

15   Not only does plaintiff fail to show a likelihood of success on the merits of her section
16   1983 claims, but the facts support affording defendants Grierson and Lambermont qualified
17   immunity. Plaintiff cites no case law to show that any right to badging privileges was clearly
18   established at the time of the conduct at issue, such that a reasonable person in defendant Grierson
19   or Lambermont's position would have known that their conduct was unconstitutional.[4]

20   Because both prongs of the qualified immunity analysis weigh in favor of defendants,
21   plaintiff cannot show that she is entitled to a preliminary injunction on her claims under 42 U.S.C.

---

[4] Notably, plaintiff also provides little detail in describing defendant Grierson's personal involvement in this case. While plaintiff explains that defendant Lambermont was responsible for investigating plaintiff's statement and ordering her suspension, plaintiff's sole particularized allegation against defendant Grierson is that on June 17, 2014, he "stated that the searches of Plaintiff will remain in effect indefinitely." (Doc. # 1).

This allegation relates to a letter that defendant Grierson sent to plaintiff's counsel on behalf of the RJC's executive committee, and does not conclusively show defendant Grierson's involvement in the decisionmaking or actions at issue. (Doc. # 8-3). This provides further support for the court's conclusion that plaintiff has not made the requisite showing of a likelihood of success on the merits of her claims.

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  § 1983. The court will now assess whether plaintiff is likely to succeed on the merits of her *Monell*
2  claim.

3          *ii.*        ***Monell* claim**

4  "Municipalities" are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing
5  a constitutional deprivation." *Long,* 442 F.3d at 1185 (9th Cir. 2006) (citing *Monell v. Dep't of*
6  *Soc. Servs.,* 436 U.S. 658, 690 (1978)). "[T]he municipality itself must cause the constitutional
7  deprivation and [ ] a city may not be held vicariously liable for the unconstitutional acts of its
8  employees under the theory of respondeat superior." *Gillette v. Delmore,* 979 F.2d 1342, 1346
9  (9th Cir. 1992).

10  To state a *Monell* claim against a municipality for "deliberate inaction," the plaintiff must
11  state: "(1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2)
12  that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the
13  plaintiff's constitutional right; and (4) that the policy was the moving force behind the
14  constitutional violation." *Miranda v. City of Cornelius,* 429 F.3d 858, 868 (9th Cir. 2005) (quoting
15  *Berry v. Baca,* 379 F.3d 764, 767 (9th Cir. 2004); *Levine v. City of Alameda,* 525 F.3d 903, 907
16  (9th Cir. 2008) ("To establish liability, a plaintiff must establish that he was deprived of a
17  constitutional right and that the city had a policy, practice, or custom which amounted to deliberate
18  indifference to the constitutional right and was the moving force behind the constitutional
19  violation.").

20  Additionally, the Ninth Circuit has established a different formulation of *Monell* liability.
21  "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort
22  was the result of a longstanding practice or custom which constitutes the standard operating
23  procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly
24  represent official policy such that the challenged action constituted official policy; or, (3) an
25  official with final policy-making authority delegated that authority to, or ratified the decision of, a
26  subordinate." *Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008).

27  Plaintiff simultaneously contends that defendants Lambermont and Grierson are
28  policymaking officials at the RJC and that the actions of these defendants were ratified by Clark

**James C. Mahan**
**U.S. District Judge**

County policymaking officials. Plaintiff seeks to hold Clark County liable for defendants' decisions regarding plaintiff's badging privileges, on the basis that these decisions result from an unconstitutional custom or policy. (Doc. # 1).

Plaintiff cannot show a likelihood of success on the merits of her *Monell* claim. Plaintiff does not identify a specific policy pursuant to which these defendants acted. More proof than the single incident at issue is required to establish *Monell* liability. *See Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989); *City of Oklahoma City v. Tuttle*; 471 U.S. 808, 824 (1985).

Plaintiff pleads that "[t]he acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of Clark County," but does not provide substantive support for this allegation. Plaintiff's contention that defendants Lambermont and Grierson acted in a policymaking capacity is similarly unsupported by the pleadings in this case. (Doc. # 1).

Accordingly, the court finds that plaintiff is not entitled to a preliminary injunction based on her *Monell* claim. The court will now turn to plaintiff's cause of action for negligence, to determine whether plaintiff has shown a likelihood of success on the merits of this claim.

### *iii.* *Negligence*

To state a claim for negligence, plaintiff must allege: (1) an existing duty of care; (2) breach; (3) legal causation; and (4) damages. *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

In her complaint and the instant motion, plaintiff contends:

> Defendants have breached their duties of care to refrain from continually searching Plaintiff after Plaintiff was found to be fit for duty; to refrain from attempting to obtain Plaintiff's protected medical information after Plaintiff was found fit for duty; failing to provide plaintiff a hearing concerning the searches after Plaintiff was found fit for duty; Refrain from punishing Plaintiff for engaging in use of protected speech, to refrain from abusing the authority granted to them by law; to refrain from violating Plaintiffs' rights guaranteed by the United States and Nevada Constitutions . . . .

(Doc. # 8).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 12 -

1    Plaintiff is not likely to succeed on the merits of her negligence claim. Plaintiff's
2 negligence claim essentially reformats her constitutional claims. As discussed, a plaintiff may
3 sue government officials under 42 U.S.C. § 1983 for alleged constitutional violations. Further, a
4 plaintiff is permitted to bring a cause of action against a municipality under the same statute,
5 termed a *Monell* claim.

6    Plaintiff does not cite any case law supporting enforcement of the foregoing duties in a
7 negligence context. Instead, in her motion for a preliminary injunction, plaintiff merely restates
8 the allegations of her complaint in an attempt to demonstrate that her negligence claim is viable.
9 This is not a sufficient showing to warrant a preliminary injunction.

10   Further, plaintiff cannot claim violations of her constitutional rights against individuals
11 through a negligence claim. The Constitution applies to government conduct, and does not restrict
12 the actions of private individuals. Plaintiff cites no case law in support of her contention that the
13 individual defendants owed her any of the alleged duties outside the context of a cause of action
14 under 42 U.S.C. § 1983. Accordingly, plaintiff has not shown that she is likely to succeed on the
15 merits of a negligence claim against defendants Grierson and Lambermont.

16   Even if plaintiff could bring a negligence claim against defendants for breach of her
17 constitutional rights, she has not shown that she is likely to succeed on the merits of those
18 underlying claims. Based on the foregoing, plaintiff's negligence claim does not entitle her to a
19 preliminary injunction.

20   **B.  Remaining elements**

21   Plaintiff also fails to meet her burden to prove the other three elements of the *Winter* test
22 for a preliminary injunction. First, because plaintiff has not shown a likelihood of success on her
23 claims, she also fails to show irreparable harm from failure to grant the injunction.

24   Further, a balancing of the hardships weighs in favor of defendants in the instant case. *See*
25 *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410-11 (9th
26 Cir. 1991) (finding that where plaintiff failed to show likelihood of success on merits, preliminary
27 injunction was warranted only where party could demonstrate that "balance of hardships tips
28 sharply in its favor"). Defendants have an interest in maintaining the safety and security of the

**James C. Mahan**
**U.S. District Judge**

- 13 -

RJC.  Plaintiff cannot show significant hardship in having to submit to typical courthouse search procedures, and any hardship does not tip the balance in plaintiff's favor.

Finally, the public interest also supports denial of the instant injunction.  Because plaintiff has not shown a likelihood of success on the merits of her constitutional claims, there is no public interest that would be served in granting the requested injunction.  By contrast, defendants' ability to manage security at the RJC serves the public interest in maintaining the safety of the community.

Taken as a whole, plaintiff's allegations are insufficient to meet the requisite burden for a preliminary injunction.  Based on the foregoing, the court will deny the instant motion.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for a preliminary injunction, (doc. # 8), be, and the same hereby is, DENIED.

DATED April 22, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 14 -